IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**ANTONIO FRANCIS BUEHLER**                                    **PLAINTIFF**

**VS**                                                                              **CIVIL ACTION NO: 1:13-cv-01100**

**CITY OF AUSTIN/AUSTIN POLICE DEPARTMENT;**        **DEFENDANTS**
**AUSTIN POLICE CHIEF ART ACEVEDO; AUSTIN**
**POLICE OFFICER PATRICK OBORSKI; AUSTIN**
**POLICE OFFICER ROBERT SNIDER; AUSTIN POLICE**
**OFFICER JUSTIN BERRY; SERGEANT ADAM**
**JOHNSON AND JOHN DOES A-Z WHO ARE UNKNOWN**
**TO THE PLAINTIFF AT THIS TIME BUT ARE IN THE**
**CHAIN OF COMMAND FOR THE AUSTIN POLICE**
**DEPARTMENT**

## COMPLAINT

### Introduction

This civil action arises from the violation of Plaintiff's civil rights on or about January 1, 2012, August 26, 2012, and September 21, 2012, in the City of Austin by the Austin Police Department. This action is brought pursuant to 42 USC 1983, 42 USC 1988, the United States Constitution, and the statutory and common law of the State of Texas.

### Jurisdiction

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331, and Section 1343. Also, the supplemental jurisdiction of this Court to hear claims arising under state law is invoked pursuant to 28 U.S.C. Section 1367. Venue in this Court is appropriate under 28 U.S.C. Section 1391(b) and Section 1392.

### Plaintiff

2. Plaintiff, Antonio Francis Buehler, is an adult resident of the City of Austin, Texas.

### Defendants

3. Defendant, City of Austin, Texas, is a unit of local government in the State of Texas.

4. Defendant, Police Chief Art Acevedo, is and was the Chief of Police for the City of Austin during the times set out in this complaint and is an adult resident of the City of Austin.

5. Defendants, Officers Patrick Oborski, Robert Snider, Justin Berry, Adam Johnson are and were Police Officers for the City of Austin during the times set out in this complaint and are adult residents of the City of Austin.

6. At all times and during all incidents relevant to this complaint, the Defendants were acting under color of law.

**Facts**

*Civil Rights Violation on January 1, 2012*

7. On January 1, 2012, Antonio Francis Buehler witnessed Officers Patrick Oborski and Robert Snider engaged in a traffic stop in the parking lot of the 7-11 on North Lamar Boulevard, Austin, Texas. Mr. Buehler was the designated driver for his friend Mr. Munoz on New Year's Eve. Mr. Buehler stopped at the 7-11 to refuel his truck.

8. Just as Mr. Buehler finished refueling his truck, the passenger in the vehicle stopped by the officers started screaming. Mr. Buehler and Mr. Munoz ran to the back end of the truck to see what was happening. They saw the passenger being yanked violently out of the truck and taken to the ground by Officer Snider. Officer Oborski left the driver behind the car and ran up to join the assault on the passenger.

9. Without stepping more than a couple of steps away from his truck, Mr. Buehler took out his phone to take pictures of the abuse by the officers. The passenger was crying and appeared to be in excruciating pain and very frightened. Mr. Buehler was very concerned. When the passenger saw Mr. Buehler trying to take pictures she screamed out asking him to please record the incident.

10. Mr. Buehler asked the police officers why they were abusing the woman and told them to stop abusing her. The officers ignored Mr. Buehler and escorted the passenger toward the furthest police cruiser, still crying.

11. Halfway between Mr. Buehler and the police cruiser, Officer Oborski turned and began walking towards Mr. Buehler and Mr. Munoz aggressively. Officer Oborski demanded to know who Mr. Buehler thought he was.

12. Mr. Buehler told Officer Oborski that he was doing nothing wrong and that he was allowed to take photos.

13. Officer Oborski kept advancing toward Mr. Buehler and asking him questions. Mr. Buehler backed up, kept his hands open down his side and his palms towards Officer Oborski and reiterated to Officer Oborski that he was within his rights several times.

14. Officer Oborski pushed Mr. Buehler in the chest, shoving him around the side of the truck. Finally, Officer Oborski chuckled, accused Mr. Buehler of spitting on him, grabbed Mr. Buehler's arm, and put Mr. Buehler into a choke hold. He then forced Mr. Buehler to the ground.

15. Officer Snider ran up and put Mr. Buehler's left arm in an arm lock, and began to apply pressure to the elbow as if he were trying to dislocate it.

16. Other unknown officers arrived on the scene. One of the other officers began to harass Mr. Buehler claiming he had seen Mr. Buehler around town, eventually telling Mr. Buehler that he saw him march in the Veteran's Day Parade for Occupy. Mr. Buehler did march in the Veteran's Day Parade; however, it was because he is an Iraqi war veteran who now opposes war.

17. Mr. Buehler was then wrongfully arrested, wrongfully detained in jail, and wrongfully prosecuted.

18. Mr. Buehler filed a complaint with Austin Police Department Internal Affairs. The Department determined that the officers did nothing wrong when they violated Mr. Buehler's civil rights. No action was taken by the Austin Police Department or Chief of Police Art Acevedo to remedy the violation of Mr. Buehler's civil rights on January 1, 2012.

*Formation of Peaceful Streets*

19. Mr. Buehler was horrified by what he had seen officers do to an innocent woman and what they did to him simply because he photographed their conduct and verbalized his concern about their conduct.

20. As a result, Mr. Buehler along with several other members of the community formed the Peaceful Streets Project. The Mission of the Peaceful Streets Project is "Through community organizing, engaging in non-political and non-violent direct action tactics, and utilizing new technologies, the Peaceful Streets Project seeks to bring about a cultural shift where individuals understand their rights and hold law enforcement officials accountable, and communities protect and serve each other." peacefulstreets.com.

21. The Peaceful Streets Project embarked on a campaign to make citizens aware of their rights and to provide a physical presence on the streets, routinely video-taping officer conduct in order to prevent and document police brutality.

22. Based upon words and conduct of officers, it is believed that subsequent violations of Mr. Buehler's civil rights occurred in retaliation for the formation of an

organization that empowers citizens to know their civil rights, to take action to secure their own safety and therefore to control their own destiny.

### *Civil Rights Violation on August 26, 2012*

23. Despite the fact that the Austin Police Department and Chief of Police Art Acevedo were aware of the civil rights violation and because they took no action to remedy the violation, the same violation of civil rights happened again.

24. On August 26, 2012, while with three other members of the Peaceful Street Project on 6th Street near Sabine Street, Austin, Texas, Mr. Buehler observed a young man being detained after a dispute with his girlfriend.

25. After arresting the man, police officers began walking the man towards the 6th Street station. Mr. Buehler was greeted by name by one of the police officers that passed by him. Mr. Buehler filmed the police officers.

26. Officer Justin Berry approached Mr. Buehler and only Mr. Buehler and yelled at Mr. Buehler to back up. Officer Berry then arrested Mr. Buehler for Interference with Public Duties.

27. Mr. Buehler filed a complaint with the Austin Police Department Internal Affairs from which Internal Affairs took no action to remedy the civil rights violation.

### *Civil Rights Violation of September 21, 2012*

28. Again, despite the fact the Austin Police Department and Chief of Police Art Acevedo were aware of these civil rights violations and because they took no action, the same violation happened yet again.

29. On September 21, 2012 while traveling on West 6th Street, Mr. Buehler observed a traffic stop. Mr. Buehler was traveling with other members of the Peaceful Streets project. Once Mr. Buehler noticed the traffic stop he pulled over away from the incident and exited the car.

30. While about 30 feet away from the stopped car, Officer Oborski instructed Mr. Buehler over a loudspeaker "Mr. Buehler back up, back up, back up!" Even though within his Constitutional rights to be filming the traffic stop, Mr. Buehler complied with Officer Oborski's request and backed up about 10 to 15 feet. While Mr. Buehler was backing up he asked how far he should back up and Officer Oborski yelled "Until I say stop!"

31. About 90 seconds later, Mr. Buehler and the other members that were with him observed another police cruiser pull up to the rear of Officer Oborski's vehicle. Mr. Buehler recognized the police officer as Sergeant Adam Johnson, who had previously

harassed members of the Peaceful Street Project that same night, and on other occasions prior to that night.

32. Contravening Officer Oborski's request that the observers move back, Sergeant Johnson told Mr. Buehler and the others to move towards the rear of the traffic stop.

33. By this time, Oborski had pulled the female suspect out of the car and was interrogating her on the sidewalk, in between Mr. Buehler and the rest of the members that were with him.

34. Mr. Buehler believed that Sergeant Johnson was trying to trick them into walking towards Officer Oborski, who previously assaulted Mr. Buehler and arrested him for crimes he did not commit. Fearing for his safety and his liberty, Mr. Buehler began to slowly back up, walking backwards, and asking Sergeant Johnson how far they needed to back away from the scene in order to be free to document the actions of Officer Patrick Oborski.

35. Sergeant Johnson kept saying that their only option was to move toward and past Officer Oborski, and that backing up any distance was not going to be sufficient.

36. After backing up an estimated 80 to 100 feet away from the traffic stop, Sergeant Johnson informed Mr. Buehler that either he moved toward and past where Officer Oborski was standing or just leave. Sergeant Johnson then grabbed Mr. Buehler's arm, handcuffed him and informed him he was under arrest just as Mr. Buehler told Sergeant Johnson that he was leaving.

37. Mr. Buehler was arrested and charged with Interference with Public Duties for filming an arrest by Sergeant Adam Johnson and for not walking towards Officer Patrick Oborski who was conducting a field sobriety test on a detained driver.

38. Mr. Buehler repeatedly asked Sergeant Johnson why he was being arrested despite having committed no crime. Sergeant Johnson refused to answer him.

39. Sarah Dickerson was filming the arrest but was also arrested and she had her camera confiscated. Mr. Buehler also filmed the incident but his camera was also confiscated.

40. Mr. Buehler filed an Internal Affairs complaint with the Austin Police Department from which Internal Affairs took no action to remedy the civil rights violation.

## Liability

41. The Chief of Police of the Austin Police Department and the persons employed within the chain of command with the Austin Police Department were involved directly or indirectly in the violation of Antonio Francis Buehler's civil rights.

42. All of the above described actions and/or inaction were undertaken pursuant to the direction and/or supervision of the Chief of Police of the Austin Police Department and unknown defendants within his chain of command. These persons were responsible for all training and supervision of the individual members of the Austin Police Department whose conduct resulted in the violation of Antonio Francis Buehler's civil rights.

*Failure to Establish Policy*

43. The Chief of Police of the Austin Police Department and persons employed within the chain of command with the Austin Police Department are responsible for establishing the Departmental policies, rules, regulations, ordinances, and procedures under which the Chief and each and every one of his employees must act.

44. Upon information and belief, at all times relevant to this Complaint, there was no policy, rule, regulation, ordinance or procedure addressing how Austin police officers should proceed when a private citizen records their conduct.

45. The lack of established policies, rules, regulations, and procedures caused the Civil Rights violations and State tort violations that occurred in this matter.

46. On information and belief, the policy makers with City of Austin/Austin Police Department knew or should have known that the lack of policy, rule, regulation or procedure would cause this type civil rights violation.

47. Specifically, Chief of Police Art Acevedo became aware of the January 1 incident shortly after it occurred. Chief Acevedo assured Mr. Buehler that a proper investigation would be accomplished. Despite this personal knowledge and personal assurances, the civil rights violations continued. Chief of Police Art Acevedo had personal knowledge of each of the civil rights violations alleged in this Complaint.

*Failure to train/failure to supervise*

48. Alternatively, the Chief of Police of the Austin Police Department and persons within the chain of command who are unknown at this time failed to properly train regarding and supervise the enforcement of established rules, regulations and procedures.

49. In addition, these persons failed to discipline, reprimand, or correct the employees whose conduct resulted in the violation of Antonio Francis Buehler's civil rights.

50. The Defendants are liable for violations of Antonio Francis Buehler's Civil Rights that occurred on January 1, 2012, August 26, 2012, and September 21, 2012, as they willfully, wantonly, or recklessly failed to properly train and supervise the individual employees whose conduct resulted in the violation of Antonio Francis Buehler's civil rights.

51. Said inept training and supervision was a direct and proximate cause of the Civil Rights Violations and State tort violations and consequential damages suffered by Mr. Antonio Buehler.

52. The City of Austin/Austin Police Department and Chief of Police Art Acevedo knew or should have known that the failure to train and/or failure to supervise officers about citizens' civil rights would cause this type civil rights violation.

*Ratification*

53. The violations of Mr. Buehler's civil rights by individual police officers employed by the Austin Police Department were ratified by the Austin Police Department and Chief of Police Art Acevedo.

54. The Austin Police Department and Chief of Police Art Acevedo knew of each of these violations, examined each of the violations pursuant to Complaints filed by Mr. Buehler, and yet took no action to remedy the violations or to prevent further civil rights violations from occurring.

55. As a result of the ratification of the individual officers' actions by the City of Austin/Austin Police Department and the Chief of Police, the City of Austin/Austin Police Department and Chief of Police Art Acevedo are liable for the violations of Antonio Buehler's civil rights and state tort violations on January 1, 2012, August 26, 2012, and September 21, 2012.

**Damages**

56. Mr. Antonio Buehler suffered loss of liberty, mental anguish, physical and emotional injuries, pain and suffering, lost wages, lost business potential, embarrassment, humiliation, shame, indignity, damages to his reputation, and special damages he incurred or will incur, including but not limited to past present and future lost wages, legal fees and legal expenses.

**Punitive Damages**

57. All individuals sued are liable for punitive damages as they were consciously indifferent to the plaintiff's constitutional rights.

**Violations -- Federal Law
42 U.C.S. _ 1983**

58. On the occasion of each above described incident, Defendants violated Mr. Buehler's Fourth Amendment and Fourteenth Amendment rights when Defendants detained Mr. Buehler without probable cause or reasonable suspicion and arrested him, and searched him, used excessive force against him causing him injuries and then continued their false prosecution of Mr. Buehler without probable cause.

59. On the occasion of each above described incident, Defendants violated Mr. Buehler's First Amendment and Fourteenth Amendment rights when they interfered with his efforts to exercise those first amendment rights.

60. The Defendants willfully and wantonly deprived Mr. Antonio Buehler of his constitutionally protected civil rights afforded to him by the Constitution of the United States of America and the First Amendment, Fourth Amendment, Fifth Amendment and Fourteenth Amendment and the Constitution of the State of Texas, by conspiring to and/or engaging in conduct which caused, encouraged, and continued violations of Mr. Antonio Buehler's civil rights. Defendants are liable for these civil rights violations pursuant to 42 U.S.C. 1983.

61. As the direct and proximate result of the herein described wrongful conduct of Defendants, Antonio Francis Buehler has been deprived of his constitutionally protected Civil Rights afforded to him by the Constitution of the United States of America and in the First Amendment, Fourth Amendment, Fifth Amendment and Fourteenth Amendment and the Constitution of the State of Texas. All of these Constitutional protections were taken from Plaintiff by Defendants gross disregard for the law and gross disregard for the United States Constitution and the Constitution of the State of Texas while Defendants were acting under color of authority and law.

## Violations _ State Law

62. The actions of Defendants violated the rights of the Plaintiff under the statutory and tort law of the State of Texas.

## Relief

In light of the foregoing, the Plaintiff requests Judgment against Defendants, jointly and severally as follows:

1. Compensatory damages from the Defendants, in an amount to be determined by the trier of fact;

2. Punitive damages from the Defendants, in an amount to be determined by the trier of fact;

3. Pre-judgment and post-judgment interest;

4. Reasonable costs and attorneys' fees; and

5. All such other relief to which the plaintiff is entitled.

RESPECTFULLY SUBMITTED,
ANTONIO FRANCIS BUEHLER

By: ____/ s/ Daphne Pattison Silverman
Daphne Pattison Silverman

Daphne Pattison Silverman
Silverman Law Group
501 N IH 35
Austin, Texas 78702
Phone  512-485-3003
Fax     512-597-1658
TX Bar No: 06739550